UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

**ELIZABETH VAUGHN,**

    **Plaintiff,**

                             Case No. 3:14-cv-02341
   **vs.**                            JUDGE ALETA A. TRAUGER
                                Magistrate Judge King

**SOCIAL SECURITY ADMINISTRATION,**

    **Defendant.**

**To:**   The Honorable Aleta A. Trauger, District Judge

## REPORT AND RECOMMENDATION

This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for a period of disability and disability insurance benefits. This matter is before the Court on Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 13)("Motion for Judgment"), Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 14)("Response"), Plaintiff's Reply Brief to "Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record" (Doc. No. 15)("Reply"), and the administrative record (Doc. No. 12).[1] For the following reasons, the undersigned **RECOMMENDS** that the Motion for Judgment be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that final judgment be entered pursuant to Sentence 4 of 42 U.S.C. § 405(g).

---

[1] Citations to pages in the Administrative Record will appear as "Tr. ___."

1

**Introduction**

Plaintiff filed her application for benefits in March 2012, alleging that she has been disabled since March 16, 2012, by reason of both exertional and non-exertional impairments. The application was denied initially and on reconsideration and Plaintiff requested a *de novo* hearing before an administrative law judge ("ALJ"). On May 16, 2013, Plaintiff, represented by counsel, appeared and testified at that hearing, as did Chelsea Brown, who testified as a vocational expert.

In a decision dated June 24, 2013, the ALJ held that Plaintiff was not disabled within the meaning of the Social Security Act from her alleged date of onset through the date of the administrative decision. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 7, 2014.

This action was thereafter timely filed. This Court has jurisdiction over the matter. 42 U.S.C. § 405(g).

**The Findings and Conclusions of the ALJ**

In his decision, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since March 16, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: back disorder; cutaneous lupus erythematosus (CLE) with vitamin D deficiency; and a mood disorder (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is occasionally able to climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She is occasionally able to balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to temperature extremes of heat and cold, wetness, humidity, vibrations, and work hazards such as machinery and heights. With regard to the claimant's mental impairments, the claimant is able to understand, remember, and complete simple and detailed instructions and tasks. She is able to maintain attention and concentration for periods of at least two hours and complete a normal workday and workweek at a consistent pace. She is able to relate appropriately to peers and supervisors. The claimant is able to adapt to routine workplace changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on August 15, 1971 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (GED) and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 16, 2012, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 12, 13, 19-21).

**Plaintiff's Claims**

Plaintiff asserts the following claims:

1. The ALJ erred by failing to properly consider all of the Plaintiff's impairments and by failing to provide sufficient reasons for not finding these impairments to be severe impairments.

2. The ALJ erred by failing to include a function-by-function assessment in the residual functional capacity ("RFC") assessment as required by SSR 96-8p.

3. The ALJ erred by failing to properly consider and weigh the evidence and treating source opinion from Phillip Beaulieu, M.D.

Motion for Judgment (PageID# 505). Plaintiff does not challenge the ALJ's credibility determination, nor does she challenge the vocational evidence.

**Standard of Review**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the ALJ are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)(internal quotation marks and citation omitted). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Services*, 667 F.2d 524, 536 (6th Cir. 1982). If the

4

Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth v. Commissioner Social Security Administration,* 402 F.3d 591, 595 (6th Cir. 2005)(citing *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

## Summary of Relevant Evidence

The ALJ accurately summarized the relevant medical evidence as follows:

> In terms of the claimant's alleged back disorder, the record shows the claimant underwent an L4 through S1 fusion in December of 2008 performed by [Jacob P. Schwarz, M.D., a neurosurgeon]. During a follow-up with Dr. Schwarz in January of 2009, the claimant reported numbness in the lower extremities, but reported it was "more of an annoyance and did not affect performing activities of daily living". Furthermore, the claimant reported being so active that she did not believe she needed physical therapy, as recommended by Dr. Schwarz (Ex 5F). In September of 2012, the claimant presented again to Dr. Schwarz reporting she had done well for two and one half years following the procedure before her pain slowly returned. The claimant reported pain, numbness, tingling, and loss of strength in her bilateral lower extremities with episodes of falling and with pain in her neck. During the interim period following the surgical procedure and the alleged return of symptoms, the claimant performed work activity as a pizza delivery employee on a fulltime and later part-time basis before quitting in March of 2012. During the September 2012 consultation, Dr. Schwarz noted the claimant had not tried physical therapy to alleviate her symptoms, but had undergone pain management and two epidural steroidal injections (ESI) without benefit (Ex 24F).
>
> Upon examination, Dr. Schwarz noted the claimant appeared pleasant, well nourished, well developed, and oriented in all areas. He further noted the claimant's extremities were absent clubbing, cyanosis, or edema, and that the claimant's gait and station were normal. The claimant's upper and lower extremity examinations lacked any significant

5

findings. Furthermore, the claimant's range of motion testing was noted as being in the full range and without pain, and the claimant's strength level was found normal throughout. With regard to the claimant's back examination, Dr. Schwarz noted there was no tenderness to palpation and the claimant displayed a normal range of motion throughout with normal joint stability (Ex 24F).

Dr. Schwarz reviewed an MRI, dated July of 2012, and noted a small disc bulge at L3-L4 without stenosis at any level. He noted mild dextroscoliosis and ordered a CT myelogram and the lumbar spine. The claimant underwent the CT procedure and returned to Dr. Schwarz in September of 2012 as directed. Dr. Schwarz performed another examination with the same results. He indicated the CT showed good hardware placement with a solid fusion in place. He further noted there was no adjacent disc herniation or stenosis at any other level. Based upon his clinical and diagnostic findings, Dr. Schwarz noted there were no findings to explain why the claimant was able to do so well for two and one half years and then gradually decline. He further noted the claimant was not eager for surgery and was relieved to learn there were no acute findings. Dr. Schwarz indicated the claimant would continue with pain management and return to him as needed. The record lacks additional evidence of return presentations with Dr. Schwarz (Ex 24F). As reflected in Dr. Schwarz's treating records, the claimant exhibited a normal gait and station. These records make no mention that the claimant was ambulating with a walker. The record further lacks a recommendation for surgery as noted in the claimant's testimony.

Regarding sleep, the treating record shows complaints of sleep loss (Ex 24F, p4). However, inconsistent with the claimant's testimony, the record shows she was prescribed Lunesta 3mg taken immediately prior to bedtime (Ex 24F).

The record shows the claimant presented for treatment with Dr. Beaulieu for pain management as noted in testimony; however, the record does not support her allegations of worsening or lack of benefit from his pain treatment. The claimant presented to Dr. Beaulieu in January of 2012 reporting a maximum pain level often, on a scale of one to ten with ten being the most severe. The claimant reported she was taking over-the-counter (OTC) Tylenol with no relief; however, she was able to continue performing part-time work activity delivering pizzas while experiencing such high pain levels. The record further shows the claimant underwent a urinary drug screening during her initial consultation with Dr. Beaulieu returning a positive reading for THC (marijuana) (Ex 12F). Treating records show the claimant continued reporting for treatment as directed and

6

that she received counseling for THC again in December of 2012, with no future aberrancies tolerated (Ex 26F, p2). During her presentations with Dr. Beaulieu, the claimant generally reported worsening symptoms with reduced functional abilities; however, she also reported decreased pain levels, at a seven of ten, while taking prescribed medications (Ex 12F, 17F, and 26F).

With regard to medications, the record shows MS Contin 30mg taken once every twelve hours; Soma 350mg taken twice daily as needed; and Percocet 10-325mg taken three times daily as needed without reported side effects (Ex 26F). The claimant testified she was not supposed to drive while taking her medications; however, she further testified that she drove to her doctor appointments, and to the grocery store every three months or so.

Dr. Beaulieu's examinations were generally noted with significant deficits in range of motion (ROM) testing, positive straight leg raising (SLR), decreased strength levels, and the occasional use of a walker for ambulation (Ex 12F, 17F and 24F). With regard to the walker, the undersigned notes the record shows the claimant reported using the walker; however, the record lacks observations from medical providers of the claimant using a walker. In February of 2013, the claimant reported reduced pain levels with medication and that she was able to perform ADL's [activities of daily living] without assistance the majority of the time and that she was able to do what she needed to do. The claimant further reported feeling that her pain was stable (Ex 24F, p1).

With regard to Dr. Schwarz and Dr. Beaulieu's examination, the undersigned finds the disparity between the pain management physician's examinations and the neurosurgeon's, Dr. Schwarz, examinations significant and accepts the neurosurgeon's examination findings (Ex 24F). Further, although the claimant testified she ceased work activity in March of 2012, Dr. Beaulieu's records showed continued work activity through June of 2012 (Ex 17F, p4).

With regard to pain, the claimant generally described her pain as a dull, sharp, aching, tingling, burning, numbing, shooting, and cramping pain that was worsened with lying, sitting, standing, walking, bending, and lifting. However, the claimant testified she spent the majority of her day lying on a couch or sitting with her feet elevated on an ottoman to relieve her pain. In January of 2012, she reported persistent functional limitations regarding her activities of daily living (ADL's) to include doing dishes, laundry, mopping, sweeping, sitting for more than one hour, standing more than twenty minutes, lifting more than ten

7

pounds, and walking for more than one block without resting. However, despite her reported limitations, Dr. Beaulieu noted the claimant remained able to perform part-time work. He further noted the claimant reported a trial course of physical therapy; however, the record does not support the claimant's report based upon Dr. Schwarz's records showing the claimant had not attempted any physical therapy. The claimant further reported using a TENS unit to alleviate her pain; however, the treatment was not effective. The claimant reported her pain level was reduced with medications and rest (Ex 12F, 17F, 24F and 26F).

In terms of the claimant's alleged cutaneous lupus erythematosus (CLE) with vitamin D deficiency, the record shows she presented to the Murfreesboro Dermatology Clinic in December of 2011 reporting pain and burning "off and on from head to toe", and a sun intolerance for the previous two years. The record further contains a positive anti-nuclear antibody reading in December of 2011. Further testing shows the claimant was negative for systemic lupus as subsequent skin sampling showed more consistent with polymorphic light eruption (PMLE) (Ex 14F and 21F).

In terms of the claimant's alleged mental impairments, the record lacks treatment on an inpatient or outpatient basis from a mental healthcare provider. However, the claimant complained of mood disorders and anxiety to Dr. Beaulieu while undergoing pain management treatment (Ex 12F, 17F, and 26F). However, Dr. Beaulieu's examination records generally show the claimant was alert and oriented; displayed appropriate recall of information; normal speech patterns; normal mood and affect; and appropriate insight and judgment. The undersigned notes the record lacks medications or other treatment commensurate with the claimant's allegations and testimony.

*\*\**
Dr. Phillip Beaulieu, M.D., the claimant's pain management physician offered an opinion, dated December 3, 2012, and a narrative supporting the claimant's allegation of disability, dated April 11, 2013 (Ex 25F and 27F). Dr. Beaulieu opined the claimant could lift and carry up to ten pounds occasionally but less than ten pounds frequently. He further opined the claimant could stand and walk for about two hours in an eight-hour workday; sit for about six hours in an eight- hour workday; and alternate between sitting, standing, and walking every five to thirty minutes accordingly. He further opined the claimant would require the need to lie down at least five to six times in an eight-hour workday; and never climb stairs or ladders; and never twist, stoop, or crouch. Lastly, Dr. Beaulieu opined the claimant would be absent from work more than four days per

8

month due to her impairments or due to treatment for her
impairments. In April of 2013, Dr. Beaulieu submitted a
narrative opinion generally consistent with his opinion of
December 2012.

Tr. 15-18.

## Discussion

1. <u>Severe Impairments</u>

As noted, the ALJ found that Plaintiff's severe impairments consist of a back disorder, cutaneous lupus erythematosus with vitamin D deficiency, and a mood disorder. Tr. 12. Plaintiff complains that the ALJ erred by failing to include as additional severe impairments chronic pain syndrome, insomnia, polyarthralgias, lumbar postlaminectomy syndrome, and lumbar radiculopathy. Motion for Judgment (PageID# 510).

The Commissioner's regulations define a "severe impairment" as one "which significantly limits [the claimant's] physical or mental ability to do basic work activities...." 20 C.F.R. §404.1520(c). Basic work activities include physical functions "such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. §404.1521(b)(1). The United States Court of Appeals for the Sixth Circuit has held that an impairment is not severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Farris v. Secretary of Health and Human Services*, 773 F.2d 85, 89-90 (6th Cir. 1985).

The finding of a severe impairment at step two of the sequential analysis is, however, only a threshold determination; where the

9

administrative law judge has found at least one severe impairment, the sequential analysis must continue and "the ALJ must consider limitations and restrictions imposed by all of [the] individual's impairments, even those that are not severe." *Fisk v. Astrue*, 253 F.App'x 580, 583 (6th Cir. 2007)(internal quotation marks omitted); *see also* 20 C.F.R. § 404.1523. Thus, so long as the ALJ considers all of the claimant's impairments, the "failure to find additional severe impairments . . . does not constitute reversible error." *Id.* at 583 (brackets and internal quotation marks omitted). *See also Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, having found that Plaintiff suffers severe impairments, the ALJ continued the sequential analysis and considered Plaintiff's impairments in determining her RFC. The Commissioner argues that the additional impairments proposed by Plaintiff are either merely symptoms of the impairments found by the ALJ or alternative descriptions of those impairments. Response (PageID# 527). This Court agrees. For example, although Plaintiff complains that the ALJ failed to include insomnia as a separate severe impairment, the ALJ fully considered this complaint and its treatment when he evaluated Plaintiff's subjective complaints. *See, e.g.,* Tr. 14. And although Plaintiff complains that the ALJ failed to include chronic pain syndrome, polyarthralgias, lumbar postlaminectomy syndrome, and lumbar radiculopathy in his articulation of Plaintiff's severe impairments, the ALJ fully considered Plaintiff's complaints of pain in connection with Plaintiff's back disorder.

Significantly, although Plaintiff complains that the additional

severe impairments proposed by her "cause additional limitations which could prevent the Plaintiff from performing at the RFC assigned in the [ALJ's] decision," Motion for Judgment (PageID# 511), Plaintiff does not identify what additional limitations, beyond those found by the ALJ in his assessment of Plaintiff's RFC, these proposed additional impairments in fact cause. Under these circumstances, the ALJ's failure to find additional severe impairments at step two of the sequential evaluation is "legally irrelevant." *See McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008).

2. RFC Assessment

The ALJ found that, despite her severe impairments, Plaintiff retains the RFC for a reduced range of light work. Tr. 13. Plaintiff complains that the ALJ erred in making this finding because he failed to include a function-by-function assessment as required by SSR 96-8p. Motion for Judgment (PageID# 513-15).

The RFC determination is an administrative finding of fact reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3); *Edwards v. Comm'r of Soc. Sec.*, 97 F. App'x 567, 569 (6th Cir. 2004). It represents the most, not the least, that a claimant can do despite her impairments. 20 C.F.R. § 404.1545(a); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007). In assessing a claimant's RFC, an ALJ must consider all relevant evidence, including medical source opinions, relating to the severity of a claimant's impairments. *See* 20 C.F.R. §§ 404.1527(d), 404.1545(a). Moreover, SSR 96-8p requires that the RFC determination consider certain exertional capacities or functions: "[s]itting, standing, walking, lifting,

11

carrying, pushing, and pulling." *Id*., 1996 WL 374184, at *5.

However, although "SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Commissioner of Social Sec.,* 30 Fed. Appx. 542, 547 (6th Cir. 2002). "'[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Id*.at 548 (citing *Bencivengo v. Comm'r of Soc. Sec*., 251 F.3d 153 (table), No. 00-1995 (3d Cir. Dec. 19, 2000)).

In the case presently before the Court, the ALJ provided a lengthy assessment of Plaintiff's RFC, including an express reference to "light work as defined in 20 CFR 404.1567(b),"[2] postural limitations, non-exertional environmental limitations, and limitations imposed by her mental impairments. Tr. 13. In making this assessment, the ALJ also provided a detailed and comprehensive review and evaluation of the evidence of record. *See* Tr. 14-19. Plaintiff does not specify in what respect the ALJ's RFC determination was deficient and this Court concludes that it was not.

3. <u>Evaluation of the Medical Evidence</u>

Plaintiff complains that the ALJ failed to properly evaluate the opinion of Phillip Beaulieu, M.D., a pain specialist who has treated Plaintiff since January 2012. *See* Tr. 462. In December 2012, Dr.

---

[2] "Light work" is defined in the Commissioner's regulations as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . ." 20 C.F.R. §404.1567(b).

12

Beaulieu assessed Plaintiff's ability to engage in work-related activities. Tr. 429-30. According to Dr. Baulieu, Plaintiff could only occasionally lift and carry 10 pounds, could stand and walk about two (2) hours per 8-hour day, with "frequent breaks," could sit for a total of about six (6) hours, but for only 30 minutes at a time; Plaintiff would need to lie down at unpredictable intervals five (5) or six (6) times per 8-hour work day. Tr. 429. Dr. Beaulieu attributed these limitations to, *inter alia*,[3] Plaintiff's limited range of motion. Plaintiff could never twist, stoop, crouch, or climb stairs or ladders due to her "use of [a] walker for ambulation 40% of time to prevent falls." Tr. 430. Plaintiff's impairments would cause her to be absent from work more than four (4) days per month. *Id*. In April 2013, Dr. Beaulieu reported that, despite medical management, including a trial of epidural steroid injections, Plaintiff "continues to have very high pain levels and limited functional abilities." Tr. 462. Dr. Beaulieu commented:

> Given the persistent high levels of pain despite medication treatment, her persistent limited range of motion of the lumbar spine, and persistent motor weakness in her legs with dependence on a walker for mobility despite previous anterior/posterior surgical fusion, Mrs. Vaughn has been unable to continue working. This is a permanent condition that has shown no signs of improving since her initial visit in my office 1/2012.

*Id*.

Dr. Beaulieu is not Plaintiff's only treating physician. It was Jacob P. Schwarz, M.D., who performed Plaintiff's anterior/posterior instrumented fusion in 2008. In an office

---

[3] Portions of Dr. Beaulieu's notes are illegible.

visit in October 2012 for complaints of pain, Dr. Schwarz noted no clubbing, cyanosis, or edema in the extremities, a normal gait and station, intact sensation and a full range of motion without pain in the lower extremities. Tr. 423. Plaintiff's active range of motion of the back was within normal limits, with normal joint stability and alignment. Tr. 424. Images and myelogram of the lumbar spine showed "good placement of anterior instrumentation, posterior trans-facet instrumentation, and solid fusion L4-S1. There is no adjacent disc herniation or stenosis at any other level." *Id*. Dr. Schwarz summarized:

> Mrs. Vaughn suffers from one year of low back pain and bilateral lower extremity pain[,] occasional numbness and weakness. She is otherwise neurologically intact. She does have mild dextroscoliosis but no other obvious abnormaility on her recent MRI scan. There is metal artifact that is considerable in the region of her previous surgery. In order to better assess that region for any stenosis or other explanation for her symptoms[,] I ordered a CT myelogram of the lumbar spine. That shows her post operative changes but no findings that would explain why she did well for 2.5 years and then gradually declined. She is not eager for surgery and is relieved that no acute findings are present. She will continue her pain management and return to see me as needed in the future.

*Id*.

The ALJ considered the reports and opinions of both treating physicians, as well as those of the state agency reviewing physicians, see Tr. 19, but assigned "little weight" to the opinion of Dr. Beaulieu:

> As an acceptable medical source, per 20 CPR 404.1502, and a treating physician, Dr. Beaulieu's opinion is allowed consideration for controlling weight per SSR 96-2p. However, the undersigned finds his opinion is not entirely consistent with the evidence and is not credited with controlling weight. The undersigned finds the

14

> examinations performed by the claimant's neurosurgeon, Dr. Schwarz, more accurate and compelling regarding the claimant's clinical and objective signs. However, the undersigned finds the claimant's signs and symptoms as reported in Dr. Beaulieu's treating records somewhat credible, to include her medication regimen. As such, the undersigned finds the record supports the finding indicating the claimant able to perform work at the light exertional level as noted in the determined residual functional capacity. Accordingly, Dr. Beaulieu's opinion is credited with little weight.

Tr. 19.

An administrative law judge is required to evaluate every medical opinion, regardless of its source. 20 C.F.R. § 404.1527(c). The Commissioner accords the greatest weight to the opinions of treating sources; if an administrative law judge does not give "controlling weight" to the medical opinion of a treating source, he must provide "good reasons" for discounting that opinion. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

As noted, the ALJ accorded "little weight" to the opinions of Dr. Beaulieu. Tr. 19. Instead, the ALJ accorded "great weight" to the opinions of the state agency reviewing physicians:

> The residual functional capacity conclusion reached by physicians and psychologists employed by the State Disability Determination Services (DDS), also supports a finding of 'not disabled.' DDS opinions are rendered from non-examining and non-treating sources; however, SSR 96-6p requires their opinions be treated as "expert opinion evidence" and weighed accordingly. The DDS consultants reviewed the documentary record and opined the claimant could perform a range of work at the light exertional level except the claimant was occasionally able to climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She was occasionally able to balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to temperature extremes of heat and cold, wetness, humidity, vibrations, and work hazards such as machinery and heights. With regard to the claimant's mental impairments, the

>claimant was found able to understand, remember, and complete simple and detailed instructions and tasks. She was found able to maintain attention and concentration for periods of at least two hours and complete a normal workday and workweek at a consistent pace. She was found able to relate appropriately to peers and supervisors and able to adapt to routine workplace changes. The undersigned finds the consultants opinions were generally consistent with the documentary record and are credited with great weight insofar as they support and are consistent with the determined residual functional capacity (Ex 13F, 16F, 18F, and 19F). With regard to the claimant's testimony and evidence received since the consultants opined as above, the undersigned finds the claimant's testimony as generally not credible and the evidence not persuasive in altering the undersigned's findings.

*Id.* This Court concludes that the ALJ properly considered all the medical evidence and opinions in the record and gave good reasons for according little weight to the opinions of Dr. Beaulieu in light of the inconsistency of those opinions with the findings of Plaintiff's other treating physician, Dr. Schwarz. The Court further concludes that the findings and conclusions of the ALJ in this regard enjoy substantial support in the record.

In short, the undersigned concludes that the decision of the Commissioner is supported by substantial evidence and employed in all respects the proper legal standards.

## Recommendation

In light of the foregoing, the undersigned **RECOMMENDS** that the Motion for Judgment (Doc. No. 13) be **DENIED**, that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that final judgment be entered pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**Procedure on Objections**

If any party seeks review by the District Judge of this report and recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the report and recommendation, specifically designating the part thereof in question, as well as the basis for the objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days thereafter. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the report and recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See*, *e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007). Filing only "vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Drew v. Tessmer*, 36 F. App'x 561, 561 (6th Cir. 2002) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

                                                *s/Norah McCann King*
                                                  Norah M$^c$Cann King
                                     United States Magistrate Judge

July 5, 2017
(Date)